**SEARS, ROEBUCK AND COMPANY, Plaintiff-Appellee,**

v.

**The CLEVELAND TRUST COMPANY, as Trustee, Defendant-Appellant.**

**No. 16165.**

United States Court of Appeals
Sixth Circuit.

Feb. 8, 1966.

See also D.C., 220 F.Supp. 120, D.C., 34 F.R.D. 488.

---

Michael R. Gallagher, Cleveland, Ohio, for appellant, Hauxhurst, Sharp, Cull & Kellogg, Cleveland, Ohio, on brief.

James C. Sennett, Cleveland, Ohio, for appellee, Antonin Scalia, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on brief.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge and MACHROWICZ, District Judge *.

MACHROWICZ, District Judge.

This is an appeal from a judgment entered on a verdict of a jury in favor of plaintiff-appellee in an action brought by a tenant against the landlord resulting from the collapse of a ceiling in the leased building, which resulted in damage to the stock of merchandise and loss of profits to the tenant during the repairs.

The tenant, plaintiff-appellee herein, obtained a written lease for ten (10) years from the defendant-appellant in 1935, which lease required the defendant appellant to construct a building in accordance with plans and specifications. The building was completed and possession delivered on November 1, 1935. The lease was extended from time to time and was in full effect on June 29, 1960, when the ceiling collapsed and the resulting damages were sustained.

The lease contained a covenant requiring the defendant-appellant to "deliver possession of said premises to Tenant in good condition and repair". It also provided that "the Landlord will at his own expense keep in good condition and repair during the term of the lease, * * plasterings of all walls and ceilings".

The collapse of the ceiling was caused by the metal lath not being securely attached to the wooden joists. Threepenny $1\frac{1}{6}''$ nails, spaced about five (5) inches on center, were used, penetrating a distance of only one-half ($\frac{1}{2}$) to five-eighths ($\frac{5}{8}$) inches, whereas plaintiff-appellee alleges that two (2) inch nails, spaced about six (6) inches on center should have been used. Inspections which were made regularly by both the appellant and appellee prior to the date of the incident did not disclose the defect which caused the collapse.

The complaint alleged three causes of action. The first, sounding in contract, claimed delivery of the building in 1935 not in good condition and repair in violation of the covenant of the lease and asked for damages to personalty resulting therefrom. The second cause of action was for negligence. The third cause of action, also sounding in tort, asserted the theory of res ipsa loquitur.

The trial Judge removed from the jury's consideration the two last-named causes of action, namely the negligence and res ipsa loquitur counts, and submitted the case to the jury only on the first cause of action, namely on the issue of whether the defendant-appellant had breached its covenant to deliver the building to the plaintiff-appellee in good condition and repair in 1935 and whether damages resulted therefrom. The Cleveland Trust Company, defendant-appellant, claims the fifteen (15) year Ohio statute of limitations as a bar to recovery on the first cause of action; and contends that any action for a breach of covenant

* Honorable Thaddeus M. Machrowicz, United States District Judge for the Eastern District of Michigan, sitting by designation.

in a lease to erect a building on the leased premises is governed by Ohio Revised Code Section 2305.06, which provides as follows:

"Except as provided in section 1302.-98 of the Revised Code, an action upon a specialty or agreement, contract, or promise in writing shall be brought within fifteen (15) years after the cause thereof accrued."

It is the position of the defendant-appellant that the statute of limitations began to run on the contractual cause of action in 1935 when the contract was allegedly breached and not on June 29, 1960, when the ceiling collapsed.

It is the contention of the plaintiff-appellee that the applicable statute of limitations is Ohio Revised Code Section 2305.10, which provides as follows:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

Plaintiff-appellee further contends that the action accrued on June 29, 1960, the date of the collapse of the ceiling and that the complaint herein was properly filed within the two-year limitation, to-wit on June 25th, 1962.

The issue as to which statute of limitations is applicable in actions for personal injuries arising out of a claimed breach of contract was considered by the Ohio Court in Andrianos v. Community Traction Co., 155 Ohio St. 47, 97 N.E.2d 549, in which the Court determined that Ohio Revised Code Sec. 2305.10, cited above, applies, regardless of the form of the action brought.

The Court there stated:

"Surely the General Assembly did not intend to create different periods of limitation for the recovery of damages growing out of bodily injury, depending on the form of the action brought. No matter what form is adopted, the essence of the action is the wrongful injury, and that it arose from the breach of an express or implied contract is immaterial.

"In other words, the term, 'action', as used in Section 11224–1, General Code [now Ohio Revised Code § 2305.10], refers to the nature or subject matter thereof and not to its form as a matter of remedial procedure. Whether the action is strictly in tort or for breach of contract, it is nonetheless an action to recover damages for bodily injury and is governed by the two-year limitation prescribed by Section 11224–1, General Code.

"Because in Ohio we have but one form of action, designated a civil action, cases from other jurisdictions the decisions in which turned upon a distinction in the form of action brought, are not pertinent. In those cases, the results depended on whether the suits were in reality tort or contract actions. As has already been pointed out, under the express wording of Section 11224–1, General Code, it makes no difference whether the action to recover damages for bodily injury is in theory ex contractu or ex delicto, nor does it matter that plaintiff may elect between the two types of action."

The Andrianos case was considered by the same United States District Court in which this case was tried in another case, Tomle v. New York Central R. R., 234 F.Supp. 101, wherein the Court stated:

"The Andrianos opinion continues on in language equally forceful and unequivocal to reinforce the Ohio Supreme Court's pronouncement that the two-year statute of limitations applies to any and all actions to recover for personal injuries. In light of the Andrianos decision, plaintiff's contention that he is entitled to the benefit of the six-year statute must be rejected."

It is true that the Andrianos case dealt with personal injuries, whereas in the present case only damages to personal property are involved. However, in the case of National Car Rentals v. Allen, 1

Ohio App.2d 321, 204 N.E.2d 554, the Ohio Court said:

"In the case before us, it is injury to personal property which is involved and not injury to person, but the rules set out in the syllabus in the Andrianos case are determinative. The case law of Ohio is sufficiently clear to avoid reliance upon decisions in other jurisdictions."

Though the Ohio law seems to have been clearly set forth in the two cases cited above, it is also the majority rule in most other states that the source of duty violated does not necessarily control the form of action, and that a suit sounding in tort lies for consequential damages arising from breach of contractual obligation, (Addison, Torts § 27). If the damages for which an action seeks recovery consist of personal injury or damage to property, the vast majority of courts apply the statute which specifically refers to such injury or damage, regardless of whether the duty breached was imposed by contract or common law. 157 A.L.R. 763; 37 A.L.R.2d 703. In Ohio the statute which specifically refers to such injury is Ohio Revised Code, Sec. 2305.-10, noted above.

It is also true that in the cases cited above, the Ohio court's ruling resulted in application of the statute which would bar the action sooner, whereas in the present case application of the statute suggested in those cases would produce the opposite effect, namely, keep the cause of action alive beyond the period covered by the 15-year statute. It is wrong, however, to assume that the reason or logic behind the rule was to necessarily non-suit the plaintiff earlier. Nothing in such rulings, or in the statutes, indicates such intent or that the same rule should not be applied where an opposite effect results therefrom.

■ This Court concludes that the action submitted to the jury by the trial court was one for damages resulting from breach of contract; that the cause of action accrued on the date the ceiling collapsed, to-wit on June 29th, 1960, and that the applicable statute of limitations, Ohio Revised Code, Section 2305.10 did not bar the action on the date it was commenced, to-wit, June 25th, 1962.

Appellant further contends that the trial Court erred in refusing to admit expert parol evidence of custom and usage in the building industry in Cleveland at the time of construction, on the issue of the alleged breach of the covenant in the lease that the building was "in good condition and repair."

Appellant concedes that if negligence were an issue, as it was in the counts withdrawn from the jury by the Court, such evidence would not be admissible, but contends that it was proper and admissible in an action for breach of contract.

■ Such interpretation of the rule applicable to evidence of custom and usage would produce an absurd result in holding that a covenant to deliver "in good condition and repair" provides less protection against the vagaries of trade usage than the ordinary law of negligence.

Furthermore, neither the appellant nor the appellee were in the building or lathing business. One is a bank and the other a department store, and neither could be presumed to know the custom or usage in the building or lathing business. No proof was offered to show that either party was aware of it. Furthermore the usage or custom was a local one, allegedly in force and effect only in Cleveland.

In the language of Williston on Contracts, Vol. 5, § 661, at pp. 112 and 113:

"Where usage is general it is ordinarily a fair assumption that parties who contract under circumstances to which the usage is applicable either have or ought to have knowledge of it; but where the usage is local, no such implication necessarily arises. It must appear either that the usage was actually known or be inferable as a fact from residence or business transactions in the locality where it prevails that the

party to the contract setting up the usage was justified in assuming knowledge of it by the other party."

And further on p. 117 (§ 661) Williston continues:

"Even though a usage is general in a particular business, one who is not in that business will not be bound by it, in the absence of knowledge or neglect of a duty, to inform himself."

In every one of the cases cited by appellant on the issue of trade usage, the party claiming the benefit of the usage was a member of the trade. No cases were brought to the attention of the Court, in which neither party to the contract was a member of the trade.

The record discloses that appellant's own agent testified (7b) that he understood "good condition" to mean "structurally adequate and sound."

Since there was no ambiguity as to the meaning and intent of that provision of the contract, the trial court was not in error in excluding as irrelevant evidence of custom or usage, which would tend to controvert the mutual understanding of the parties, neither of which were members of the building trade.

Appellant contends also that the Court erred in misstating to the jury that it would be negligence for appellant not to take into account a factor of safety in constructing the building in question and in subsequently refusing to correct his error or grant the motion for mistrial.

During the plaintiff-appellee's direct questioning of its expert witness, the following question was directed to him (Transcript, p. 235):

"And on the basis of your training and experience, sir, wouldn't it be negligence not to take into account this factor of safety?"

When counsel for appellant objected to the question, the Court allowed the objection by responding:

"Yes, he has already said that."

It is contended that the witness had not so testified previously and that the Court's comment distorted the witness's testimony.

Since the issue of negligence was not submitted to the jury this comment would be harmless and irrelevant. Furthermore in the beginning of his charge the trial judge instructed the jury:

"If the Judge should ever say anything wherein your memory of the testimony disagrees with his, of course, you reject his and use your own".

In addition, the Judge repeatedly advised the jury that they were the sole judges of the facts on the evidence before them, and that no one could interfere with that function of theirs.

The comment of the Court which appellant objects to was not therefore such prejudicial error as to call for the verdict of the jury to be disturbed.

Other errors claimed by appellant are comments of the Judge and alleged criticism of counsel during the charge to the jury.

This Court and other Appellate Courts have repeatedly stressed that the trial Judge should be limited to only such comments as would be conducive to a fair and impartial consideration of the evidence by a jury, and he should be extremely careful not to trespass beyond those limitations. A careful review of the charge, however, fails to disclose that the trial Judge went clearly beyond such limitations in his comments. Furthermore, at the conclusion of the charge counsel for the appellant made only general exception thereto that "the Court has gone beyond the bounds of proper comment on the evidence" without stating what particular comments of the Court were excepted to.

It is the opinion of the Court that the trial Judge's comments did not affect the substantial rights of the appellant and did not constitute reversible error.

Judgment affirmed.